IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY WOOLEY, *Plaintiff*, | ) ) ) |
| v. | ) No. 4:21-CV-0996 ) |
| WELLPATH, f/k/a CORRECT CARE SOLUTIONS, LLC, JOHN SHAFIK, DO *Defendants*. | ) ) ) ) ) |

**COMPLAINT**

Plaintiff Tammy Wooley, by her attorneys at the Mizner Law Firm, files this Complaint and states as follows:

**A. Parties.**

1. Plaintiff Tammy Wooley is an adult individual who currently resides in Denver, Pennsylvania. However, at all times relevant to this Complaint, Ms. Wooley was incarcerated at the State Correctional Institution at Muncy ("SCI Muncy") located at 6454 PA-405, Muncy, PA 17756.

2. Defendant Wellpath, formerly known as Correct Care Solutions, LLC ("Wellpath") is a Kansas Corporation with a principal place of business at 1283 Murfreesboro Pike Street 500, Nashville, TN 37217-2421. Wellpath provided, through a contract with the Commonwealth, medical care and services for the Department of Corrections, including the State Corrections Institute at Muncy, during the relevant time period. Wellpath is vicariously liable for the acts of its employees, agents and/or servants, including without limitation Dr. Shafik.

3. Defendant John Shafik, DO is an adult individual who at all relevant times was employed as a physician by Wellpath, at SCI Muncy. At all relevant times to this case, Dr. Shafik

1

was acting within the course and scope of his employment with Wellpath, and under color of state law.

## B. Jurisdiction and Venue

4. This action is being brought under the Civil Rights Act, 42 U.S.C. § 1983 which provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" of the United States.

5. This Honorable Court has jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 & 1343.

6. This Complaint also includes pendent state law claims, over which this Honorable Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the territorial jurisdiction of this District and the Defendants are subject to personal jurisdiction within this District.

## C. Facts

8. At all times relevant to this case, Ms. Wooley was incarcerated at SCI Muncy, and was therefore totally dependent on the medical providers there to provide her with adequate medical care.

9. On April 13, 2020, Ms. Wooley was seen by Angelo Anzalone, MD for an abscess on her back that had been ongoing for weeks but had recently become painful.

10. Dr. Anzalone estimated the abscess to be 4cm x 4cm. He scheduled her for an incision and drainage procedure and started her on antibiotics in case it was infected.

11. On April 20, 2020, Dr. Anzalone performed an incision and drainage procedure of her right posterior shoulder abscess.

12. Following the procedure she was prescribed oral antibiotics and ordered daily wound dressing changes to be performed by the prison nurses.

13. The abscess failed to resolve after being drained and treated with antibiotics, so on May 1, 2020, Dr. Anzalone performed a repeat incision and drainage procedure of her persistent right posterior shoulder abscess.

14. The wound was packed with an antiseptic gauze with orders for nursing to change the wound packing and dressings daily.

15. This continued until May 20, 2020 when the dressing changes were discontinued because the open wound had closed.

16. Even though the wound had apparently healed to observation, the cyst persisted in her right posterior shoulder. Ms. Wooley had been experiencing debilitating pain and limited range of motion in her right shoulder ever since the second incision and drainage procedure was performed.

17. The only definitive treatment for an inclusion cyst like Ms. Wooley's cyst is complete surgical incision of the entire cyst with the cyst wall to prevent recurrence. Incision and drainage procedures do not remove the cyst wall, therefore, the cyst can continue to recur and become infected as Ms. Wooley experienced.

18. On May 22, 2020 Ms. Wooley presented to sick call reporting, "I'm having a lot of pain in my right arm from my shoulder all the way down to my fingers and I can't lift my arm up all the way. The PA I saw said it was something associated with the wound on my back.

When I tried to lift it today to shave under my armpit I got a sharp shooting pain and saw stars and throbs all night, this started over three weeks ago."

19. In response to Ms. Wooley's symptoms, CRNP Isaias Vargas ordered an x-ray and prescribed an oral steroid.

20. However, steroid prescription was never provided to her. Therefore almost one month later, on June 18, 2020, Ms. Wooley requested her x-ray results and also the steroid prescription which she had never received.

21. On June 22, 2020, Ms. Wooley was again seen in sick call for her right shoulder pain, and was examined by Viorica Velott, CRNP.

22. CRNP Velott noted that the shoulder pain had been present since May and that Ms. Wooley was tearful and upset, rating her pain as 8/10.

23. She was not able to move her right arm. CRNP Velott reviewed the x-ray of her shoulder taken on May 29, 2020, and noted that it showed only mild acromioclavicular narrowing. CRNP Velott's diagnosis was "right shoulder pain, rule out frozen shoulder."

24. Ms. Wooley was advised to stay on the current treatment plan, but CRNP Velott advised that she was concerned that the pain and limited range of motion had persisted for so long, and that Ms. Wooley should see an orthopedic specialist.

25. CRNP Velott noted she would discuss the patient's condition and a possible orthopedic consult with Dr. Shafik.

26. On June 24, 2020, CRNP Velott discussed Ms. Wooley's complaints of increasing severe pain with Dr. Shafik, and noted a physical therapy consultation request would be placed.

27. CRNP Velott never ordered an orthopedic consultation even though she thought Ms. Wooley could be developing a "frozen shoulder."

28. Frustrated with the lack of care and treatment for both her cyst and the pain and limitations in her shoulder, on July 1, 2020, Ms. Wooley filed a grievance against Dr. Anzalone and Dr. Shafik.

29. She wrote in part: "Since having [the cyst] lanced a second time I am having pain in my back, loss of mobility in my right arm, as well as pain in my right arm that often shoots sharp pains into my chest. The pain got so severe that I put in a sick call… I still have not been referred to a specialist like I was told I would be. I would like to request a release of information to be seen by a specialist… Not only have I not been referred to a specialist, but I have received no care for my issue."

30. Her grievance was denied on the basis that she had "timely and adequate care pertaining to" her complaints.

31. On July 2, 2020 Ms. Wooley was seen by Jamie Ficks, CRNP with complaints of continued right shoulder pain and reduced range of motion ever since having abscess excised in May 2020.

32. Ms. Wooley reported that she was unable to sleep more than an hour a night due to pain. She could not perform normal personal hygiene with difficulty due to pain and limited range of motion.

33. CRNP Ficks noted that Ms. Wooley had tried Tylenol, ibuprofen and steroids without relief, and that:

    a. She was unable to lift her right arm any higher than chest level.

    b. She reported a severe, stinging, and sharp pain in her right shoulder with any movement of her arm.

    c. She was very concerned she will lose all of her mobility in her right arm which is her dominant arm.

    d. She was to be seen by PT several months ago but was never called out to see them.

34. In response, CRNP Ficks prescribed Ms. Wooley medication for her pain and inflammation, as well as a muscle relaxant, and placed her on medical unemployment for 30 days.

35. On July 22, 2020 Ms. Wooley was seen by Dr. Shafik, who advised her that she likely had adhesive capsulitis, which is commonly known as a frozen shoulder.

36. Dr. Shafik opined that the adhesive capsulitis occurred coincidentally with her infection, and was likely not connected to the abscess. He ordered physical therapy and blood work to rule out other causes.

37. Finally, on July 24, 2020, more than two months after it was originally ordered, Ms. Wooley was evaluated by physical therapist Charlotte Dudek, who questioned a possible partial right rotator cuff tear or other underlying process because of significant pain and sensitivity in the right upper back.

38. She gave Ms. Wooley some range of motion exercises to work on and recommended further diagnostics of right upper back such as MRI.

39. No MRI was ordered by the medical providers.

40. On July 24, 2020, new x-rays of Ms. Wooley's right shoulder and neck were taken. The x-rays showed some mild degenerative or arthritic changes that are not normally associated with the severe pain and loss of mobility she was experiencing.

41. In July 29, 2020 an ultrasound evaluation of Ms. Wooley's upper right posterior shoulder revealed a "moderate complex fluid filled collection suspicious for abscess." In other words, the cyst had persisted in her back despite being drained twice by Dr. Anzalone.

42. On July 29, 2020, Ms. Wooley should have been referred to a general surgeon for evaluation and definitive surgical excision of her persistent cyst.

43. However, she was not.

44. On July 31, 2020 Ms. Wooley was again seen by physical therapist, Ms. Dudek who noted that Ms. Wooley "appears to have developed right shoulder adhesive capsulitis."

45. On August 7, 2020, Ms. Dudek advised that Ms. Wooley should not perform any further physical therapy until she was seen by a general surgeon.

46. On August 18, 2020, Ms. Wooley was seen by CRNP Velott with continued, increasing, severe pain in her right shoulder and right arm, as well as limited range.

47. CRNP Velott advised that she would be seen soon by Dr. Shafik, and a consultation request for general surgery will be submitted for her shoulder abscess.

48. On August 24, 2020, Ms. Wooley was finally evaluated by Dr. Shafik, who diagnosed her with Cervical Spondylitis, an age-related arthritic or degenerative condition, right shoulder adhesive capsulitis, shoulder arthritis, fluid collection in posterior back and mental health concerns.

49. Dr. Shafik offered to order further imaging and testing on her cervical spine.

50. However, Ms. Wooley told Dr. Shafik that her pain was not coming from her neck, but rather from her cyst, and she refused testing on her spine.

51. Frustrated that her main issues of the persisting cyst and frozen shoulder were not being treated adequately, and knowing her release date was nearing, Ms. Wooley declined any further care from Dr. Shafik, with the intention of pursuing care after her release.

52. Ms. Wooley refused to allow Dr. Shafik to treat her from that point forward, because based on how her condition had worsened under his care to that point, she no longer trusted him.

53. On September 2, 2020, Ms. Wooley was prescribed an antibiotic, Bactrim, because there was swelling and pain at the site of her cyst on her upper right back, near her shoulder.

54. On September 8, 2020, she was again seen by Dr. Shafik, and she once again advised that she was being released soon and did not want him to treat her any further. Instead, her plan was to visit a general surgeon once she was released for treatment of the cyst.

55. Ms. Wooley was released from incarceration on September 14, 2020.

56. Immediately, Ms. Wooley sought out and received evaluation with a general surgeon, an orthopedic surgeon and physical therapy.

57. Dr. Joseph Voystock at Penn Medicine Lancaster General Health Surgical Group evaluated Ms. Wooley on September 30, 2020. He noted that the cyst had been there for quite some time and had been increasing in size and had become infected in the past. He scheduled Ms. Wooley for surgical excision of the cyst.

58. On October 29, 2020 Ms. Wooley was evaluated by Dr. Colin Heinle of Orthopedic Associates of Lancaster. Dr. Heinle diagnosed her with "right shoulder adhesive capsulitis after parascapular cyst incision and drainage." He performed a steroid injection and prescribed physical therapy.

59. On January 1, 2021, Ms. Wooley was evaluated and reported that the cortisone shot was effective in treating her pain, but that her range of motion was still limited, despite physical therapy and home exercises. She was ordered to undergo an MRI of her shoulder.

60. On January 19, 2021, Ms Wooley followed up and was advised that her MRI revealed no tearing in her rotator cuff, and that the main issue she was suffering from was significant limitations to her range of motion, related to her adhesive capsulitis.

61. She was advised to continue anti-inflammatory medications and to resume physical therapy, and that if those conservative treatments were not effective, she could undergo manipulation of her shoulder under anesthesia.

62. Unfortunately, Ms. Wooley's condition failed to improve, and therefore on April 5, 2021, she underwent manipulation of her right shoulder under anesthesia - in other words, she was put to sleep so that her shoulder could be forced through painful movement that her body would not otherwise tolerate, in an attempt to improve her range of motion in the future.

63. At this point, it is too early to tell whether Ms. Wooley's condition will be improved by that procedure, or whether her range of motion limitations will be permanent.

64. However, the likelihood of Ms. Wooley regaining her full range of motion is low, and gets more unlikely the longer her condition persists.

65. She will likely have permanent restriction in her shoulder range of motion that is a direct result of the improperly managed cyst.

66. In summary, Ms. Wooley developed adhesive capsulitis, or a frozen shoulder, from the prolonged reduced use from pain and limited range of motion that was directly related to the protracted mismanagement of the right posterior shoulder cyst/abscess.

67. There are two phases to adhesive capsulitis.

68. The first is inflammatory and transient. If range of motion can be resumed and inflammation controlled, it is unlikely no permanent restrictions.

69. The second phase comes after prolonged periods of uncontrolled inflammation and restriction and results in the formation of fibrous scar tissue, which diminishes the shoulder's range of motion.

70. Had the cyst been managed in a timely and appropriate manner, Ms. Wooley would not have had the prolonged limitation of motion which resulted in the adhesive capsulitis.

## COUNT I - DELIBERATE INDIFFERENCE
## IN VIOLATION OF THE EIGHTH AMENDMENT

*Tammy Wooley*
*v.*
*John Shafik*

71. The foregoing averments are hereby incorporated by reference, as if set forth in full herein.

72. "Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995).

73. A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

74. A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

75. Defendant Dr. Shafik was aware that Ms. Wooley had been suffering from a cyst and related complications in her shoulder area since April 2020.

76. Defendant Dr. Shafik discussed Ms. Wooley's condition with nursing staff on at least two occasions on May 29, and June 24, 2020.

77. On June 24, 2020, Defendant Dr. Shafik even discussed physical therapy for Ms. Wooley, but did not order any physical therapy for her until July 22, 2020.

78. The first time that she was seen for physical therapy, Ms. Wooley was recommended for further imaging and evaluation, which on July 29, 2020 revealed that the cyst had persisted in her back despite being drained twice by Dr. Anzalone.

79. As soon as the findings of July 29, 2020, were confirmed, Ms. Wooley should have been referred to a general surgeon for evaluation and definitive surgical excision of her persistent cyst by Defendant Dr. Shafik.

80. Defendant Dr. Shafik failed to order any surgical consultation for Ms. Wooley, through the date she was finally released from prison on September 14, 2020.

81. Denying or delaying care by a capable medical professional for Ms. Wooley's cyst created a risk of serious physical injury to Mr. Wooley.

82. Denying or delaying care by a capable medical professional for Mr. Wooley's cyst created a risk of needless pain and suffering for Mr. Wooley.

83. Defendant Dr. Shafik acted with deliberate indifference to the serious medical needs of Mr. Wooley and disregarded an excessive risk of harm to her health and safety.

84. The risk of serious harm and the necessity of treatment by a properly trained medical professional to Mr. Wooley was obvious even to a layperson.

85. As a direct and proximate result of the deliberate indifference by defendant Dr. Shafik, Ms. Wooley suffered severe injuries.

86. Defendant Dr. Shafik is liable for the harm suffered by Ms. Wooley as a result of his deliberate indifference.

87. As a result of Dr. Shafik's failure to timely order physical therapy, and then a surgical consultation following the initial recommendations of the physical therapist, Ms. Wooley has suffered the following:

   a. Right shoulder adhesive capsulitis after parascapular cyst incision and drainage;
   b. Loss of range of motion in her right shoulder;
   c. Repeated medical interventions, including surgical incisions and cortisone shots;
   d. Unnecessary and avoidable pain and suffering;
   e. Anxiety and humiliation; and
   f. Loss of life's pleasures.

WHEREFORE, Plaintiff Tammy Wooley respectfully requests that this Honorable Court enter judgment in her favor, and against Defendant John Shafik in an amount in excess of $75,000.00, along with all other relief permitted by law.

## COUNT II
## PROFESSIONAL NEGLIGENCE

*Tammy Wooley*
*v.*
*Wellpath f/k/a Correct Care Solutions, LLC*
*John Shafik*

88. The foregoing averments are hereby incorporated by reference, as if set forth in full herein.

89. As her medical provider, defendant Dr. Shafik owed a duty of care to Ms. Wooley.

90. An aspect of this duty was to provide Ms. Wooley with the minimum standard of care required for someone in her condition, and with her medical needs.

91. Employees and/or agents of Wellpath, including but not limited to Defendant Dr. Shafik, owed a duty of care to Ms. Wooley ensured that she was timely provided care for her shoulder, after it became clear that she was not recovering from the cyst which was diagnosed in April 2020.

92. Employees and/or agents of Wellpath, including but not limited to Defendant Dr. Shafik, owed a duty of care to Ms. Wooley to ensure that she was timely referred to physical therapy, and then for a surgical consultation.

93. However, employees and/or agents of Wellpath, including but not limited to Defendant Dr. Shafik failed to timely execute this duty, by delaying both referral to physical therapy and a surgeon for months.

94. As a result of Dr. Shafik's failure to timely order physical therapy, and then a surgical consultation following the initial recommendations of the physical therapist, Ms. Wooley has suffered the following:

   a. Right shoulder adhesive capsulitis after parascapular cyst incision and drainage;

    b. Loss of range of motion in her right shoulder;

    c. Repeated medical interventions, including surgical incisions and cortisone shots;

    d. Unnecessary and avoidable pain and suffering;

    e. Anxiety and humiliation; and

    f. Loss of life's pleasures.

WHEREFORE, Plaintiff Tammy Wooley respectfully requests that this Honorable Court enter judgment in her favor, and against Defendants Wellpath and John Shafik in an amount in excess of $75,000.00, along with all other relief permitted by law.

Respectfully submitted,

MIZNER LAW FIRM

By: /s/ John F. Mizner

PA Supreme Court ID 53323
John F. Mizner
jfm@miznerfirm.com

311 West Sixth Street
Erie, Pennsylvania 16507
(814) 454-3889

*Attorney for the Plaintiff*