```
                UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF PENNSYLVANIA
TAMMY WOOLEY,                )    CIVIL ACTION NO. 4:21-CV-996
        Plaintiff            )
                             )
    v.                       )
                             )    (ARBUCKLE, M.J.)
WELLPATH, et al.,            )
        Defendants           )
```

MEMORANDUM OPINION
*Defendants' Motion to Dismiss (Doc. 10)*

I.   INTRODUCTION

Former state inmate Tammy Wooley alleges that Dr. John Shafik provided such inadequate care that it violated both the Eighth Amendment and state professional negligence law. The defendants now seek to dismiss the Eighth Amendment claim. Because Ms. Wooley has, at most, pleaded a professional negligence action, I will grant Defendants' Motion to Dismiss the Eighth Amendment claim. I will also decline to exercise supplemental jurisdiction over Plaintiff's professional negligence claim.

II.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action on June 3, 2021 by filing a Complaint (Doc. 1). The Complaint lists two defendants, Wellpath d/b/a Correct Care Solutions, LLC and John Shafik D.O. (collectively the "Defendants"). (*Id.*).

At the motion to dismiss stage, I must take all facts pleaded as true. *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). At all relevant times to the Complaint,

Tammy Wooley (Ms. Wooley or "Plaintiff") was incarcerated at State Correctional Institution at Muncy ("SCI Muncy"). (Doc. 1, ¶ 8). On April 13, 2020 Plaintiff presented to Angelo Anzalone, MD complaining of pain caused by an abscess on her back/right shoulder. (*Id.* at ¶¶ 9;11). Dr. Anzalone noted the abscess, scheduled her for an incision and drainage procedure, and started her on antibiotics. (*Id.* at ¶ 10). On April 20, 2020, Dr. Anzalone performed an incision and drainage procedure on her right posterior shoulder abscess. (*Id.* at ¶ 11).

The abscess failed to heal properly, so on May 1, 2020, Dr. Anzalone performed another incision and drainage of her right posterior shoulder abscess. (*Id.* at ¶ 13). Following the second procedure however, the cyst remained in Plaintiff's shoulder, causing her debilitating pain and limiting her range of motion. (*Id.* at ¶ 16). However, the wound looked visibly closed, and healed. (*Id.*). According to Plaintiff, incision and drainage procedures do not remove the cyst wall, so the cyst can reoccur and become infected unless it is surgically incised. (*Id.* at ¶ 17).

On May 22, 2020, Plaintiff returned to sick call, complaining of pain in her right shoulder and arm. (*Id.* at ¶ 18). She also reported that she had limited mobility in her shoulder. (*Id.*). In response, Nurse Isaias Varas ordered an x-ray and prescribed her an oral steroid. (*Id.* at ¶ 19). Plaintiff never received her steroid. (*Id.* at ¶ 20).

On June 22, 2020, Plaintiff again reported to sick call for right shoulder pain and saw Nurse Viorica Velott. Plaintiff reported her pain as an 8/10 and that she could not move her right arm. (*Id.* at ¶¶ 22-23). Nurse Velott reviewed Plaintiff's May 22, 2020 x-ray, expressed concern about her pain and its duration, and thought that Plaintiff should consult with an orthopedic specialist. (*Id.* at ¶ 24). Nurse Velott noted that she would discuss Plaintiff's condition with Dr. Shafik. (*Id.* at ¶ 25). Nurse Velott's diagnosis was "right shoulder pain, rule out frozen shoulder." (*Id.* at ¶ 23).

Two days following this visit, on June 24, 2020, Nurse Velott consulted with Dr. Shafik on Plaintiff's condition "and noted that a physical therapy consultation request would be placed." (*Id.* at ¶ 26). However, Nurse Velott or Dr. Shafik never ordered an orthopedic consultation, despite her notes that she would rule out frozen shoulder. (*Id.* at ¶ 27). Plaintiff waited one month to see a physical therapist. (*Id.* at ¶ 37).

On July 2, 2020, Ms. Wooley saw Nurse Jamie Ficks about her right shoulder pain, and reported to Nurse Ficks that she could not sleep more than hour a night and could not maintain her personal hygiene because of the pain. (*Id.* at ¶¶ 31-32). Nurse Ficks provided Plaintiff with pain medication, a muscle relaxant, and medical unemployment. (*Id.* at ¶ 34).

On July 22, 2020, Plaintiff saw Dr. Shafik, who told Plaintiff she "likely had adhesive capsulitis, which is commonly known as a frozen shoulder." (*Id.* at ¶ 35).

Dr. Shafik thought the frozen shoulder occurred coincidentally with her right shoulder abscess. (*Id.* at ¶ 36). He ordered physical therapy for Plaintiff and ordered blood work. (*Id.*).

On July 24, 2020, Plaintiff saw physical therapist Charlotte Dudek. (*Id.* at ¶ 37). Dr. Dudek examined her, gave her exercises to do, and recommended Plaintiff have an MRI done. (*Id.* at ¶ 38).

On July 29, 2020, Plaintiff had an ultrasound done, which showed that her right shoulder cyst remained. (*Id.* at ¶ 35). Plaintiff contends that this point, staff should have referred her to a general surgeon to have the cyst removed. (*Id.* at ¶ 42).

On July 31, 2020, Dr. Dudek examined Plaintiff, and noted that Plaintiff "appears to have developed right shoulder adhesive capsulitis." (*Id.* at ¶ 44). On August 7, 2020, Dr. Dudek told Plaintiff not to perform more exercises until she saw a general surgeon. (*Id.* at ¶ 45).

On August 18, 2020 Plaintiff saw Nurse Velott again and complained of pain in her shoulder. (*Id.* at ¶¶ 46-47). Nurse Velott told her that a general surgery consult will be requested and Dr. Shafik will see Plaintiff soon. (*Id.*). On August 24, 2020, Dr. Shafik examined Plaintiff and diagnosed her with cervical spondylitis, an age-related arthritic or degenerative condition, right shoulder adhesive capsulitis, shoulder arthritis, fluid collection in her posterior back, and mental health concerns. (*Id.* at ¶ 48). Dr. Shafik wanted to order imaging and testing on Plaintiff's cervical

spine, but Plaintiff refused because her pain came from her cyst, not her neck. (*Id.* at ¶ 50). Thus, Plaintiff declined further care from Dr. Shafik because she did not trust him, and she was about to be released from prison. (*Id.* at ¶ 52). On September 2, 2020, she received an antibiotic for her cyst. (*Id.* at ¶ 53). She saw Dr. Shafik again on September 8, 2020 but again, declined his care. (*Id.* at ¶ 54).

On September 14, 2020 she was released from prison, and starting on September 30, 2020, saw outside providers. (*Id.* at ¶¶ 55-58). Despite further treatment outside of prison, Plaintiff is unsure whether she will ever regain full range of motion in her right arm. (*Id.* at ¶¶ 63-66).

Plaintiff's Complaint contains two counts. The first is an Eighth Amendment claim against John Shafik because he showed deliberate indifference to Plaintiff's medical needs. Plaintiff puts particular emphasis on two events to make her claim: (1) when Dr. Shafik said he would place a physical therapy consultation, but the consultation did not happen for another month; and (2) Dr. Shafik's failure to consult with a general surgeon for surgical excision of Plaintiff's cyst. (*Id.* at ¶¶ 75-83). Plaintiff alleges that Dr. Shafik knew about the cyst and its related complications

since April 2020.[1] (*Id.*). Plaintiff alleges that 42 U.S.C. § 1983 gives her a cause of action and is seeking at least $75,000 in damages against Dr. Shafik. (*Id.* at ¶ 87).

The second count is a professional negligence claim against all defendants (*Id.* at ¶¶ 88-94). For this count, Plaintiff seeks at least $75,000 in damages, as well as other relief permitted by law. (*Id.* at ¶¶ 94).

On August 4, 2021, Defendants filed a Motion to Dismiss Plaintiff's Eighth Amendment claim. (Doc. 10). Defendants filed their Brief in Support the same day. (Doc. 11).[2] On August 23, 2021, Ms. Wooley filed a Brief in Opposition. (Doc. 12). Defendants did not file a reply brief. This matter is now ripe for resolution.

III.   THE MOTION TO DISMISS STANDARD

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and ultimately determine

---

[1] While Plaintiff alleges Dr. Shafik knew about Plaintiff's condition starting in April 2020, the Complaint is silent on Dr. Shafik's exact role in Plaintiff's care until Nurse Velott discussed Plaintiff's care with Dr. Shafik on June 22, 2020.
[2] Defendants' Brief does not have page numbers so I will refer to the page numbering superimposed on all electronic filings by the CM/ECF system.

whether Plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In review of a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three-step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where they are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminister Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

As the Court of Appeals has observed:

> The Supreme Court in *Twombly* set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "merely consistent with" a defendant's liability, "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

*Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011).

IV. ANALYSIS

Here, I will discuss the standards for Eighth Amendment – inadequate medical care claims, why Plaintiff's Eighth Amendment claim fails, and then, why this Court will not exercise supplemental jurisdiction over Plaintiff's professional negligence claim.

A. STANDARDS FOR EIGHTH AMENDMENT – MEDICAL CARE CLAIMS

The Eighth Amendment prohibits cruel and unusual punishment, and consistent with that demand, it requires prison officials to "provide human conditions of confinement, including adequate medical treatment. *Hankey v. Wexford Health Sources*, 383 F. App'x 165, 168 (3d Cir. 2010) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). To establish a violation of the constitutional right to adequate medical care, an inmate must show (1) a serious medical need, and

(2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

However, the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Thus, such complaints fail as Constitutional claims under the Eighth Amendment since "the exercise by a doctor of his professional judgment is never deliberate indifference. *See, e.g. Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ('[A]s long as a physician exercises professional judgment his behavior

will not violate a prisoner's constitutional rights.')". *Gindraw v. Dendler*, 967 F.Supp. 833, 836 (E.D. Pa. 1997). *Bennett v. PrimeCare Med. Inc.*, No. 3:18-CV-517, 2018 WL 6072126, at *4 (M.D. Pa. Sept. 14, 2018), *report and recommendation adopted*, 2018 WL 6062306 (M.D. Pa. Nov. 20, 2018). A prison official acts with deliberate indifference to an inmate's serious medical need when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

    B.    PLAINTIFF'S EIGHTH AMENDMENT CLAIM FAILS

Neither parties discuss whether Plaintiff had a serious medical need, so I only focus on the second prong of an Eighth Amendment medical care claim: whether Dr. Shafik acted or failed to act with deliberate indifference to Plaintiff's medical needs.

Defendants argue that Plaintiff received "significant treatment" and Dr. Shafik "made reasonable and appropriate recommendations for conservative treatment in the form of medication and physical therapy." (Doc. 11, p. 13). Defendants argue that Plaintiff merely disagrees with her course of treatment, which is not actionable under the Eighth Amendment. (*Id.* at 10).

Plaintiff counters that her care at SCI Muncy "failed to meet the objective minimum standard of treatment required by the standard of care." (Doc. 12, pp. 4-5). Plaintiff argues that Defendants knew about Plaintiff's condition and pain, but failed to refer Plaintiff to specialists, who could remove the cyst in Plaintiff's right shoulder. (*Id.* at 8). Further, as Ms. Wooley argues, the mere fact that Defendants provided care is not a conclusive defense to a finding of deliberate indifference. (*Id.* at 9-10). However, I agree with Defendants; there is no Constitutional violation in this case. I will discuss my reasoning in two parts: first a discussion of the events of May and June 2020, and second, the events of July to September 2020.

*May to June 2020*. Following a May 1, 2020 incision and drainage procedure, Plaintiff visited the health clinic daily so staff observe and care for her wound. (*Id.* at ¶¶ 14-15). These daily visits ended on May 20, 2020. (*Id.*).

On May 22, 2020 Plaintiff returned to the clinic and saw Nurse Vargas. (Doc. 1, ¶¶ 18-20). Plaintiff complained of right shoulder pain, and in response, Nurse Vargas ordered an x-ray and oral steroid. (*Id.*). Plaintiff never received the steroid until she followed up on it on June 18, 2020. (*Id.*). Then, four days later, on June 22, 2020, Plaintiff saw Nurse Velott for shoulder pain. (*Id.* at ¶¶ 26-27). Nurse Velott examined Plaintiff and told Plaintiff she will discuss her condition and a possible orthopedic consult with Dr. Shafik. (*Id.*). Two days later, Nurse Velott spoke to Dr. Shafik, and in treatment notes, they noted that a physical therapy consultation would

be placed. (*Id.*). However, it took about one month before Plaintiff saw a physical therapist on July 24, 2020. (*Id.* at ¶ 37).

Up this point, there is no cognizable Eighth Amendment violation. Plaintiff puts great emphasis that she did not see a physical therapist for one month, despite Dr. Shafik's knowledge that she needed it. However, this delay is not a cognizable Eighth Amendment violation. Plaintiff's Complaint acknowledges that Dr. Shafik and Nurse Velott either placed or intended to place, a physical therapy consult for Plaintiff. Therefore, at most, Plaintiff alleges that Dr. Shafik failed to follow up on a consult order. That omission might constitute a negligence claim, not an Eighth Amendment claim. *See Reed v. Williams*, No. 18-cv-377, 2020 WL 6158304, at *22 (M.D. Pa. Oct. 21, 2020) ("As pled, Dr. Sobolewski prescribed physical therapy for Reed. At most, Reed alleges that Dr. Sobolewski was negligent in not following up with Medical or Commonwealth Defendants as to whether his physical therapy orders were timely followed.").

*July to September 2020*. On July 2, 2020, Plaintiff returns to the health clinic, complaining of right shoulder pain and reduced range of motion. (*Id.* at ¶¶ 31-34). On this visit, Plaintiff saw Nurse Ficks who prescribed her pain medication and a muscle relaxant. (*Id.*). Nurse Ficks also placed Plaintiff on medical unemployment for 30 days. (*Id.*). Plaintiff then saw physical therapist Charlotte Dudek on July 24, 2020, and on the same day, had an x-ray taken. (*Id.* at ¶¶37-40). The x-ray did not

explain her symptoms. (*Id.*). On July 29, 2020, an ultrasound was done, and it showed that Plaintiff's cyst reappeared. (*Id.* at ¶¶ 41-42). At this point, Plaintiff strenuously argues that medical staff should have consulted a general surgeon. (*Id.* at ¶ 43); (Doc. 12, pp. 7-8). However, when Dr. Shafik saw Plaintiff on August 24, 2020, he recommended medical imaging and testing, not a general surgery consult. (*Id.* at ¶¶ 48-49). Ms. Wooley refused his recommendation, lost trust in Dr. Shafik, and declined further care from him. (*Id.* at ¶¶ 48; 51; 54). Plaintiff was subsequently released from prison twenty days later on September 14, 2020. (*Id.* at ¶ 55).

  Again, I fail to see how Dr. Shafik acted with deliberate indifference in this time frame. Plaintiff emphasizes the fact that Dr. Shafik failed to consult with a general surgeon as an act so far below the standard of care, that it violated the Eighth Amendment. I disagree. Dr. Shafik believed the appropriate action was to conduct more medical imaging and tests. Plaintiff believed that Dr. Shafik should have ordered a consult to a general surgeon and that medical imaging to the cervical spine was useless. This divergent belief shows that Plaintiff is really disagreeing with Dr. Shafik over the type of treatment she received. That is not an actionable claim under the Eighth Amendment. *Gause v. Diguglielmo*, 339 F. App'x 132, 136 (3d Cir. 2009) ("mere disagreements between the prisoner and the treating physician over medical treatment do not rise to the level of deliberate indifference."); *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987).

So, in sum, Plaintiff received care consistent with the Constitution during her last few months at SCI Muncy. She received medications, medical imaging, and physical therapy during the relevant time. And while Plaintiff suffered a month-long delay in actually obtaining physical therapy and did not receive her preferred treatment (a surgical consultation), those issues lie in negligence, not the Eighth Amendment. As such, I will dismiss Court I of Plaintiff's Complaint.

C. WHETHER THIS COURT WILL EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S PROFESSIONAL NEGLIGENCE CLAIM

A federal court "may decline to exercise supplemental jurisdiction [over state law claims] if the . . . district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In deciding whether to decline supplemental jurisdiction, a district court must factor in "the values of judicial economy, convenience, fairness, and comity." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). These factors tip towards declining supplemental jurisdiction when "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." *Id.* Considering this, I decline to exercise supplemental jurisdiction over Plaintiff's professional negligence claim.[3] I note that the two-year statute of limitations period for Pennsylvania negligence claims likely has not ended

---

[3] I note that Plaintiff appears to have a cognizable professional negligence claim, and she has appropriately submitted Certificates of Merit against all the Defendants. (Docs. 3-4).

because the first contact with the Defendants did not begin until April 13, 2020. *See* 42 Pa.C.S. § 5524(2) (negligence actions have a two-year statute of limitations). And even if it has ended, the statute of limitations was tolled while this federal case was pending, and for a period of thirty days after this case is dismissed. 28 U.S.C. § 1367(d); *Hedges v. Musco*, 204 F.3d 109, 123-24 (3d Cir. 2000).

Finally, I note that Plaintiff asserted an amount in controversy greater than $75,000. If Plaintiff is seeking to invoke this Court's diversity jurisdiction, I invite Plaintiff to file a Motion for Reconsideration within fourteen days of the Court's order. L.R. 7.10.

IV. CONCLUSION

Plaintiff's pleadings are sounded in negligence claims rather than Constitutional claims. As such, Defendants' Motion to Dismiss will be granted. An appropriate Order will follow.

Date: March 7, 2022    BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge